## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LYNDO JONES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0117-B |
| | § | |
| CITY OF MESQUITE, TEXAS, and | § | |
| DERRICK WILEY, | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Order Referring Motion* dated February 8, 2018 (doc. 14), before the Court for recommendation is *Defendant's (City's) 12(b)(6) Motion to Dismiss Plaintiff's Complaint*, filed February 7, 2018 (doc. 8). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

### I. BACKGROUND

On January 18, 2018, Lyndo Jones (Plaintiff) filed suit under 42 U.S.C. § 1983 against Officer Derrick Wiley (Officer) of the Mesquite Police Department (MPD) in his individual and official capacities, and the City of Mesquite, Texas (the City). (doc. 3 at 1.)[1] He alleges that Officer's use of excessive force and his unlawful detention by MPD officers violated his Fourth Amendment rights, and that the City and its officials failed to adequately train, supervise, and/or discipline its officers. (*Id.* at 1-2, 8-14.) He seeks actual damages, "unliquidated damages in an amount that is within the jurisdictional limits of the court," punitive damages, pre-judgment and post-judgment interest, and attorney's fees. (*Id.* at 14-17.)

At around 9:00 PM on November 8, 2017, Plaintiff parked his vehicle in a parking lot "while

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

he searched for directions on his GPS device." (*Id*. at 4.) Plaintiff declined help from an "unidentified person," and "[s]hortly thereafter [Officer] reported to the location, allegedly responding to a 911 call concerning a distressed vehicle at the location." (*Id*.) Officer approached Plaintiff's "vehicle and immediately began shouting for [Plaintiff] to 'get out of the [expletive] vehicle' and warned" Plaintiff that he would shoot him "in the [expletive] face!" (*Id*. at 5.) Plaintiff stepped out of his "vehicle with his hands up in the surrender position," and Officer "commanded [him] to lie face down onto the pavement, to which [he] complied." (*Id*.) Officer then mounted Plaintiff, and applied "his knee to [Plaintiff's] back with such force that [Plaintiff] believed his back would break." (*Id*.) Officer "placed his gun to the back of [Plaintiff's] head and repeatedly threatened to '[expletive] kill [him]' or 'shoot [him] in [his expletive] face!'" (*Id*.) Plaintiff rolled over onto his back to relieve the pressure applied by Officer, and Officer then "grabbed [Plaintiff] by his neck and placed [the] gun to his head while shouting 'I will [expletive] kill you!'" (*Id*.)

Plaintiff "squirmed away from the repeated blows and threats of [Officer]," and stood up "while continually showing signs of surrender . . . ." (*Id*.) He alleges that he "put his hands up and begged [Officer] not to shoot him" but Officer "instead discharged his firearm[,] striking [P]laintiff three times in the back for no justifiable or lawful reason." (*Id*.) He suffered "three gunshot wounds to the back and torso." (*Id*. at 7.) Plaintiff asserts that he "was not attempting to evade arrest, attack[,] and/or harm [Officer] or any other person at the time [Officer] made the decision to use deadly force," and that Officer "was fully aware that his use of excessive and deadly force would violate [Plaintiff's] constitutional rights." (*Id*. at 5.)

Plaintiff was taken to the Baylor Medical Center to undergo emergency surgery, where he was listed in critical condition. (*Id*. at 6.) He was "placed under arrest and chained to the hospital

bed by [MPD]." (*Id*.) On November 15, 2017, he was interrogated by an MPD officer, "despite being aware that [P]laintiff was represented by counsel[,] and despite [Plaintiff] invoking his right to counsel by stating 'I have a lawyer . . . where is he?'" (*Id*.) Before performing a full investigation, "MPD initially reported [Plaintiff] initiated a scuffle with [Officer]." (*Id*.) Plaintiff asserts that the MPD ratified Officer's actions "by charging [him] with evading arrest days after he was shot by [Officer]." (*Id*.)

As a result of the shooting, Plaintiff "remains under the care of his treating physicians and his prognosis remains guarded." (*Id*. at 7.) He has had to return to the emergency room multiple times "to treat the residual effects of each bullet wound," and "has been treated for multiple infections from his wounds and for pneumonia due to the after effects of the shrapnel exploding inside of his body, causing blood to enter his lungs." (*Id*.) Shrapnel still remains in his body, and he "has been informed that his injuries are serious and permanent in nature." (*Id*. at 7-8.)

Plaintiff asserts that Officer "has such a known reputation for anger, hostility, and brutality" that the police chief, city council, and the city manager "were or should have been aware," and that the City "has a longstanding record of not providing its employees with adequate training and not preventing excessive force by" MPD officers. (*Id*. at 6.) He contends that Officer's "unlawful and unwarranted acts, lack of training[,] and the official customs or policies of the MPD caused Plaintiff's injuries." (*Id*.) He further asserts that "no reasonably prudent police officer under similar circumstances could have believed that [Officer's] conduct was justified." (*Id*.)

On February 7, 2018, the City moved to dismiss Plaintiff's complaint for failure to state a claim. (doc. 8.) Plaintiff filed a response on February 28, 2018, and the City filed a reply on March 12, 2018. (docs. 17; 19.) The motion is now ripe for recommendation.

## II. RULE 12(b)(6)

The City moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. (*See* doc. 9.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 ((noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

### III. MUNICIPAL LIABILITY

The City moves to dismiss Plaintiff's 42 U.S.C. § 1983 claims on grounds that his complaint "fails to adequately plead a claim of municipal liability . . . ."  (doc. 9 at 3-9.)[2]

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  Municipalities, including counties and cities, may be held liable under § 1983.  *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).  A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).  It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however.[3] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases).  "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983

---

[2] Although the City also moves to dismiss claims brought under the Fourteenth Amendment and the Texas Constitution, Plaintiff clarifies in his response that he is only asserting "his case under the Fourth Amendment of the United States Constitution and pursuant to 42 U.S.C. § 1983."  (docs. 9 at 9-10; 17 at 16-17.)

[3] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat Superior*, Black's Law Dictionary (10th ed. 2014).

requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).

## A.    <u>Failure to Train</u>

The City asserts that Plaintiff's "complaint lacks any specific factual allegations" to support a claim for failure to train under § 1983.  (doc. 9 at 5-7.)

### 1.    *Policymaker*

The City asserts that "Plaintiff pleads <u>no facts</u> to support an allegation that any City policymaker was aware of any actions which would constitute a practice or custom of deliberate indifference <u>to the deprivations alleged</u> by Plaintiff."  (doc. 9 at 6 (underline in original).)[4]

For purposes of Rule 12(b)(6), a plaintiff need only plead facts showing that the challenged policy was promulgated or ratified by a policymaker.  *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016).  *Groden* involved a claim against the City of Dallas for a "crackdown policy" of arresting vendors without probable cause "in retaliation for annoying-but-protected speech" in Dealey Plaza.  *Id*. at 286.  Because the plaintiff alleged that the city's official spokesman publically

---

[4] Plaintiff's response asserts that "the City is asking the Court to impose a heightened pleading standard that is not required," and that based on *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), there is no heightened pleading standard for municipal liability under § 1983.  (doc. 17 at 7-8.)  In *Twombly* and *Iqbal*, the Supreme Court clarified that the pleading requirement for facts rather than conclusions lies within Fed. R. Civ. P. 8(a), not any heightened pleading standard.  The difference between the Rule 8(a) pleading standard and an impermissible heightened pleading standard is in the factual particularity or specificity needed to state a claim.  *See Twombly*, 550 U.S. at 569 n.14.  A heightened pleading standard requires that a plaintiff "allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Id*. at 570 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  The *Twombly* court did not find that "the allegations in the complaint were insufficiently "particular[ized]"; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Id*. at 569 n.14.  Requiring Plaintiff to allege facts sufficient to support his claim for municipal liability does not impose an impermissible heightened pleading requirement.

announced the new policy and gave media interviews describing it, the Fifth Circuit found that he had sufficiently pleaded promulgation or ratification by a policymaker.  *See id.*

Here, Plaintiff alleges that the City, MPD, and chief of police, under the direction of the mayor and city council, "developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of force and detentions, and apprehension of individuals."  (doc. 3 at 12.)[5]  He fails to plead any facts concerning any actions by any alleged policymaker to ratify or promulgate any policy, however.  (*See id.* at 11-13.)  Because he has alleged no facts to support his allegations that any alleged policymaker promulgated or ratified an unconstitutional policy, or from which a reasonable inference can be made that any alleged policymaker promulgated or ratified an unconstitutional policy, he fails to allege sufficient facts to "raise [his] right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555.

### 2.  *Official Policy or Custom*

The City also contends that "Plaintiff presents claims of policy, practice[,] and custom only in vague and conclusory terms," and pleads "no factual allegations which would support the deliberate indifference required to plead [his] claim against the City . . . ."  (doc. 9 at 6.)

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

---

[5]  The City does not dispute that Plaintiff has identified a policymaker.  (*See* doc. 9.)  The identity of the policymaker official is a question of state law and not of fact.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).  "Sometimes, a court can make this determination by consulting state statutes . . . . [or] courts may need to consult 'local ordinances and regulations.'"  *Groden*, 2016 WL 3361186, at *3 n.5 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (per curiam) (consulting the Texas Government Code to determine the policymaker for Texas cities); *Jett*, 7 F.3d at 1245 (consulting the Texas Educational Code to determine the policymaker for Texas school districts); *see also Praprotnik*, 485 U.S. at 125.

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579–80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found insufficient an allegation that "[the officer] was acting in compliance with the municipality's customs, practices or procedures." *Spiller*, 130 F.3d at 167.

It has also found that a single incident is not enough to infer an official policy or custom.  *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11–CV–3099–B–BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail.").[6]

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Co.*, 219 F.3d 450, 458 (5th Cir. 2000), *cert. denied*, 131 S. Ct. 66 (2010)).  In the Fifth Circuit, "to hold a municipality liable for failure to train an officer, it must have been obvious that 'the highly predictable consequence of not training' its officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'"  *Id.* (quoting *Brown*, 219 F.3d at 461). "The failure to train must reflect a 'deliberate' or 'conscious' choice by a municipality."  *World Wide Street Preachers Fellowship*, 591 F.3d at 756 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (internal quotation marks omitted).

---

[6] There is an "extremely narrow" single incident exception in the context of failure-to-train claims.  *Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014).  Under that exception, "§ 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations" in "extreme circumstances."  *Brown*, 219 F.3d at 459; *Khansari v. City of Houston*, No. H-13-2722, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (citing *Brown*, 219 F.3d at 452–48).  To show liability, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation."  *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).  Although Plaintiff's response appears to argue that his allegations support this exception, (doc. 17 at 10-11), it does not apply because he does not claim that a decision was made not to train Officer, or that Officer "was provided no training whatsoever."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) ("Our caselaw suggests, however, that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever); *see McClendon v. City of Columbia*, 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc*, 285 F.3d 1078 (5th Cir. 2002), *decision on rehearing en banc*, 305 F.3d 314 (5th Cir. 2002) (noting "there is a difference between a complete failure to train . . . and a failure to train in one limited area.").

Here, Plaintiff's complaint alleges:

> the [City's] . . . failure to provide adequate training to MPD police officer's regarding the proper use of force and wrongful detentions reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens[,] and made the violations of Plaintiff's constitutional rights a reasonable probability.

(doc. 3 at 12-13.)  He asserts that the City, along with the MPD and police chief, acting under the direction of the mayor and city council, "developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of force and detentions, and apprehension of individuals." (*Id*. at 12.)  He also alleges that Officer's actions "were the result of . . . wrongful and reckless customs, policies, practices[,] and/or procedures" that the chief of police, city council, city manager, and mayor "knew or should have known but never provided the requisite and proper training." (*Id*. at 13.)

Plaintiff's allegations focus only on Officer's actions against him.  He makes general claims that there have been similar incidents involving Officer in the past for his assertion that the City "and the MPD failed to train adequately its employees regarding the proper use of force and detentions." (*Id*. at 12-13.)  His allegations do not suffice to show that it was obvious that the highly predictable consequence of the City's alleged failure to train was that its officers "'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d at 461).  Additionally, he alleges no facts to support his assertion that the City's failure to train reflects deliberate indifference on the part of its policymakers.  Because he makes only formulaic recitations of the elements, and relies on general and conclusory allegations, his allegations do not support a finding of municipal liability under a

10

theory of failure to train.  *Twombly*, 550 U.S. at 555.[7]

### 3.    Moving Force

The City argues that even if Plaintiff has sufficiently alleged an official policy or custom,

he has also failed to plead any facts "which would support a claim that any unspecified deliberate

indifference in any way caused the alleged deprivations claimed."  (doc. 9 at 4.)

Plaintiffs must adequately plead that the municipal policy or custom was the "moving force"

of the constitutional deprivation, which requires a "high threshold of proof."  *Piotrowski*, 237 F.3d

at 580 (citing *Monell*, 436 U.S. at 694).  "In other words, a plaintiff must show direct causation."

*Peterson*, 588 F.3d at 848 (citing *Piotrowski*, 237 F.3d at 580).  A "plaintiff must show that the

municipal action was taken with the requisite degree of culpability and must demonstrate a direct

causal link between the municipal action and the deprivation of federal rights."  *Valle*, 613 F.3d at

542 (quoting *Brown*, 520 U.S. at 404) (internal quotation marks omitted); *see also Johnson*, 379

F.3d at 310 (quoting *Fraire*, 957 F.2d at 1281) (noting "[t]his connection must be more than a mere

'but for' coupling between cause and effect").  A plaintiff therefore "must demonstrate that a

municipal decision reflects deliberate indifference to the risk that a violation of a particular

constitutional or statutory right will follow the decision."  *Valle*, 613 F.3d at 542  (quoting *Brown*,

520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 (quoting

*Brown*, 520 U.S. at 407) ("[E]ven a facially innocuous policy will support liability if it was

promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional

---

[7] Although Plaintiff does not specifically assert claims for failure to discipline or supervise, his complaint mentions the City's alleged failure to discipline or supervise officers.  (doc. 3 at 2.)  The elements required to prove municipal liability on a failure to discipline or supervise theory are the same as those required under a failure to train theory.  *E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017) (citing cases). Accordingly, to the extent Plaintiff seeks to hold the City liable for its alleged failure to discipline or supervise officers, he fails to state a claim for the same reasons he fails to state claim for failure to train.

violations would result.").  Simple or even heightened negligence is insufficient to meet the deliberate indifference requirement.  *Piotrowski*, 237 F.3d at 579 (citing *Brown*, 520 U.S. at 407).

Here, Plaintiff alleges that Officer's actions "resulted from a lack of training, and comported with [the City's] illegal de facto policies." (doc. 3 at 14.)  These conclusory allegations do not show "how the [alleged] customs and practices . . . were a 'moving force' behind the [alleged] specific constitutional violations made the basis of this suit . . .," however. *Bragg v. Safeek*, No. 3-09-CV-1931-N-BD, 2010 WL 5140670, at *2 (N.D. Tex. Dec. 13, 2010).  The Fifth Circuit in *Spiller* found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support the causation element for municipal liability under *Monell*.  *Spiller*, 130 F.3d at 167.  As in *Spiller*, Plaintiff's assertions that Officer's actions resulted from a lack of training are too vague and conclusory to support the causation element for municipal liability.  *See id*.  To the extent that he alleges other action on the part of the City's policymakers in support of causation, he makes only conclusory statements and formulaic recitations of the elements.  (*See* doc. 3 at 12-13 ("The failure to train its employees in relevant respect reflects a deliberate indifference to . . . the rights of the City's inhabitants . . . .").)  Accordingly, Plaintiff has failed to allege facts in support of causation, the third element of his municipal liability claim.

Because Plaintiff has failed to allege sufficient facts to raise his right to relief above the speculative level, his failure to train claim against the City should be dismissed for failure to state a claim.  *See Twombly*, 550 U.S. at 555.

12

## B.    Unlawful Seizure of a Person

The City argues that Plaintiff fails to plead facts to support an inference of a policy or custom of unlawful arrests, and notes that "[m]unicipal liability cannot be predicated upon agency or *respondeat superior*."  (doc. 9 at 3, 8-9.)

Plaintiff's complaint alleges that Officer was acting within customs or policies of the City and MPD "in regards to . . . the wrongful detention of Plaintiff as authorized and/or ratified by the Policymakers, specifically," the mayor, city manager, and chief of police.  (doc. 3 at 11-12.)  He does not allege any policy or custom regarding his claim for unlawful seizure of a person, however.  (*See id*. at 13-14.)  Rather, he alleges only that MPD officers "unlawfully detained [him] without probable cause, or reasonable suspicion that any violation or crime had been committed" in violation of his Fourth Amendment rights.  (*Id*.)  As noted, although the City may be held liable under § 1983 if the execution of its customs or policies deprives a plaintiff of his constitutional rights, it may not be held liable under a theory of *respondeat superior*.  *See Monell*, 436 U.S. at 690–91; *Piotrowski*, 237 F.3d at 578 (citing cases).  Because he relies on the actions of MPD officers as a basis for his unlawful seizure claim against the City, it should be dismissed for failure to state a claim.

## C.    Excessive Force

Plaintiff asserts his claim for excessive force against Officer in both his individual and official capacities.  (doc. 3 at 8.)  The City argues that Plaintiff has failed to "plead any facts which would support the inference of a custom of unlawful use of deadly force . . . ."  (doc. 9 at 8-9.)

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's claim against Officer in his official capacity is therefore essentially a claim against his

13

government employer, the City. *See Graham*, 473 U.S. at 165.  As noted, a municipality cannot be liable under § 1983 based on a theory of *respondeat superior*; rather, plaintiffs must prove that their injury was caused by action pursuant to official municipal policy or custom.  42 U.S.C.A. § 1983; *see Brown*, 520 U.S. at 403; *Monell*, 436 U.S. at 691–95; *Piotrowski*, 237 F.3d at 578 (citing cases); *see also McClure v. Biesenbach*, 355 F. App'x 800, 803–04 (5th Cir. 2009).

Here, Plaintiff's complaint does not specifically identify a policy, practice, or procedure that was officially adopted and promulgated by the City's policymakers.  (*See* doc. 3.)  He alleges only that Officer "followed a procedure designed to inflict excessive force in restraining an individual in a non-life threatening situation," and "was acting within custom, policy, practice and/or procedure of MPD at the time of the incident in regards to the use of force as authorized and/or ratified by the Policymakers . . . ."  (*Id*. at 9-10.)  His response clarifies that he is alleging that "the City violated his civil rights through a department custom that encouraged officers to use excessive force," and that there is "a pattern of similar [c]ity-wide civil rights violations by police officers evidencing the City's deliberate indifference to the consequences of its failures."  (doc. 17 at 6, 9-10.)  He does not, however, allege any facts showing a pattern of similar incidents of alleged use of excessive force. (*See* doc. 3.)  He only sets out the November 8, 2017 incident, and generally states that there have been "similar incidents with [Officer], which have resulted in excessive force in the use of a [t]aser weapon against at least two other African American[s] and other instances of misuse of force."  (*Id*. at 8-9, 13.)

The Fifth Circuit has explained that "[w]here prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice

of city employees.'" *Peterson*, 588 F.3d at 850 (quoting *Webster*, 735 F.2d at 842). The Fifth

Circuit also explained that "[a] pattern . . . requires 'sufficiently numerous prior incidents,' as

opposed to isolated instances." *Id*. (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th

Cir. 1989)). Plaintiff's vague and conclusory allegations of prior incidents with Officer do not rise

to the level of "persistent, often repeated, constant violations, that constitute custom and policy as

required for municipal section 1983 liability." *See Piotrowski*, 237 F.3d at 581 (quoting *Bennett v.

City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *Webster*, 735 F.2d at 842 ("If actions of city

employees are to be used to prove a custom for which the municipality is liable, those actions must

have occurred for so long or so frequently that the course of conduct warrants the attribution to the

governing body of knowledge that the objectionable conduct is the expected, accepted practice of

city employees."). At best, Plaintiff has alleged only isolated instances of excessive force involving

one MPD officer, and as previously stated, the City is not subject to liability for his allegedly

unconstitutional actions. Because Plaintiff essentially relies on a single incident plus generalities

and conclusions, he has not sufficiently alleged an official policy or custom for municipal liability.

*See World Wide Street Preachers Fellowship*, 591 F.3d at 753–54; *Pineda*, 291 F.3d at 329;

*Piotrowski*, 237 F.3d at 581; *see also Hester*, 2012 WL 1430539, at *3 (stating that a "single alleged

incident is insufficient to infer" an official policy or custom).

In conclusion, Plaintiff has failed to allege sufficient facts to raise his right to relief above

the speculative level, and the City's motion to dismiss should be granted.[8]  *See Twombly*, 550 U.S.

---

[8] Plaintiff's complaint alleges that the police chief, city council, and MPD ratified Officer's actions by condoning the use of force, disregarding complaints, allowing the violation of departmental procedures, and "charging [Plaintiff] with evading arrest days after he was shot by [Officer]." (doc. 3 at 2-3, 6.) The Supreme Court and Fifth Circuit have recognized that "a policy maker could 'ratify' a subordinate's illegal conduct, thus putting the force of a municipal policy behind it[.]" *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004); *see Praprotnik*, 485 U.S. at 128 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would

15

at 555.[9]

## IV. RECOMMENDATION

The City's Rule 12(b)(6) motion to dismiss should be **GRANTED**, and Plaintiff's claims against it should be **DISMISSED with prejudice**.[10]

**SO RECOMMENDED** on this 25th day of July, 2018.

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

be chargeable to the municipality because their decision is final"). "Policymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Milam*, 113 F. App'x at 627. Plaintiff does not specifically assert a claim based on any policymaker's approval or ratification of Officer's allegedly unconstitutional conduct, and he fails to state any facts in support of his allegations. (*See* doc. 3.) Accordingly, to the extent his complaint may be liberally construed as asserting municipal liability based on a policymaker's ratification of Officer's conduct, he fails to state a claim. *Reed v. Kerens Ind. Sch. Dist.*, No. 3:16-CV-1228-BH, 2017 WL 2463275, at *15 (N.D. Tex. June 6, 2017) (finding that the plaintiff's conclusory allegations were insufficient to establish municipal liability under the ratification theory); *see Khansari v. City of Houston*, 14 F. Supp. 3d 842, 871 (S.D. Tex. 2014) (determining that the plaintiffs "failed to allege facts capable of establishing a § 1983 claim that the City ratified the officers' conduct.").

[9] The City seeks attorney's fees in its motion to dismiss. (*See* docs. 8 at 2; 9 at 11.) In a suit to enforce § 1983, the court may, in its discretion, grant the prevailing party reasonable attorneys' fees and related expenses. *See* 42 U.S.C. § 1988(b). While a prevailing plaintiff in a § 1983 action is usually entitled to an award of fees under § 1988, "prevailing defendants cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless." *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009) (citation omitted). To the extent that the City seeks attorney's fees, it may file a post-judgment request under Federal Rule of Civil Procedure 54(d)(2) that also complies with the applicable Local Civil Rules for the Northern District of Texas.

[10] In his response, Plaintiff "asks for leave to amend his complaint to address any defects the Court observes in his pleadings." (doc. 17 at 17.) A party, however, is not entitled to remedy a pleading deficiency simply by seeking leave to amend in response to a motion to dismiss. *Spiller*, 130 F.3d at 167. When a party opposes a motion to dismiss on its merits while also asking for leave to amend should the Court deem dismissal proper, the party "may not avoid the implications" of his choices. *Id.* Moreover, Plaintiff has not sought leave to amend in accordance with LR 15.1, and his request may be denied on this basis. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation). Consequently, the request to amend is denied.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17